```
18
```
WALTER WILHELM LAW GROUP
a Professional Corporation
Riley C. Walter #91839
Kathleen D. DeVaney #156444
Danielle J. Bethel #315945
205 E. River Park Circle, Suite 410
Fresno, CA 93720
Telephone: (559) 435-9800
Facsimile: (559) 435-9868
E-mail: rileywalter@w2lg.com

Attorneys for Debtor and Plaintiff
TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER

(SPACE BELOW FOR FILING STAMP ONLY)

# IN THE UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re<br><br>**TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER,**<br><br>    Debtor.<br><br>Tax ID #: 94-6002897<br>Address: 869 N. Cherry Street<br>            Tulare, CA 93274 | CASE NO. 17-13797<br><br>Chapter 9 |
| TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER,<br><br>    Plaintiff,<br><br>vs.<br><br>CELTIC LEASING CORP., a California corporation; MB FINANCIAL BANK, N.A.<br><br>    Defendants. | ADV PROC. NO. _____<br><br>Date: N/A<br>Time: N/A<br>Place: 2500 Tulare Street<br>       Fresno, CA 93721<br>       Courtroom 13<br>Judge: Honorable René Lastreto II |

**EXHIBITS TO COMPLAINT TO AVOID FRAUDULENT TRANSFER**
**(Defendants Celtic Leasing Corp. and MB Financial Bank, N.A.)**

---

EXHIBITS TO COMPLAINT TO AVOID FRAUDULENT TRANSFER (Defendants Celtic Leasing Corp and MB Financial, N.A.)     -1-     00168894-gaa-01.23.2018

| Exh. | Description | Pages |
|---|---|---|
| A | Master Lease | 4 |
| B | Organization Certificate | 1 |
| C | Insurance Authorization | 1 |
| D | Lease Schedule No. 3826A01 | 1 |
| E | Addendum A | 1 |
| F | Letter Agreement | 1 |
| G | Acceptance Certificate | 1 |
| H | Purchase/Leaseback Agreement and Bill of Sale | 2 |
| I | UCC Financing Statement | 3 |
| J | Statement of Information Form LLC-12 | 1 |
| K | Tulare Asset Management LLC Articles of Organization | 1 |

Dated: February 6, 2018

By: /s/ Riley C. Walter

WALTER & WILHELM LAW GROUP,
a Professional Corporation

Riley C. Walter, Attorneys for Plaintiff
Tulare Local Healthcare District dba
Tulare Regional Medical Center



**CELTIC LEASING®**

MASTER LEASE Number CML- 3826A
CELTIC LEASING CORP. – Lessor
4 Park Plaza, Suite 300 • Irvine, CA 92614
866.323.5842 • 949.263.3880 • Fax: 949.263.1331

Lessee: __Tulare Local Health Care District__

Address: __869 North Cherry St., Tulare, CA 93274__

This is a **MASTER LEASE AGREEMENT** (herein called "Lease"). Lessor hereby agrees to lease to Lessee, and Lessee hereby agrees to lease from Lessor, the items of tangible and/or intangible property (collectively called "Equipment" and individually called "Item") described on any Lease Schedule(s) ("Schedule") now or in the future annexed hereto and made a part hereof, subject to the terms and conditions set forth herein. Each Schedule annexed hereto incorporates the terms of this Lease and is independent and enforceable as a separate transaction.

1. **QUIET ENJOYMENT:** So long as Lessee is not in default hereunder, Lessor shall not disturb Lessee's quiet enjoyment of the Equipment, subject to the terms and conditions of this Lease.

2. **NO WARRANTIES AND UNIFORM COMMERCIAL CODE ACKNOWLEDGMENT:** Lessee acknowledges that Lessor is not the manufacturer, vendor, developer, distributor, publisher or licensor (for purposes of this Lease, all of which are called "Manufacturer", both collectively and individually) of the Equipment. Lessee further acknowledges and agrees that LESSOR MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR ANY PURPOSE, CONDITION, DESIGN, CAPACITY, SUITABILITY OR PERFORMANCE OF ANY OF THE EQUIPMENT, OR ANY OTHER REPRESENTATION OR WARRANTY WITH RESPECT THERETO, IT BEING AGREED THAT THE EQUIPMENT IS LEASED "AS IS". LESSEE FURTHER REPRESENTS THAT ALL ITEMS OF EQUIPMENT ARE OF A SIZE, DESIGN AND CAPACITY SELECTED BY IT, AND THAT IT IS SATISFIED THE SAME IS SUITABLE FOR LESSEE'S PURPOSES. Lessor assigns to Lessee any and all Manufacturer warranties, to the extent assignable, for the term of the Lease. Lessor shall have no liability to Lessee or anyone claiming through Lessee for the breach of any such warranty or for any claim, loss, damage or expense of any kind or nature resulting, directly or indirectly, from the delivery, installation, use, operation, performance, or lack or inadequacy thereof, of any Items of Equipment. This Lease is a "Finance Lease" as defined in, and for the purpose only of Division 10 of the California Commercial Code and not necessarily for any accounting purpose or otherwise. Lessee acknowledges that Lessor has informed or advised Lessee, either previously or by this Lease, of the following: (i) the identity of the "Supplier", (ii) that Lessee may have rights under the "Supply Contract", and (iii) that Lessee may contact the Supplier for a description of any such rights. (The terms "Finance Lease", "Supplier" and "Supply Contract" as used herein have the meanings ascribed to them under Division 10 of the California Commercial Code.)

3. **TERM:** The "Commencement Date" for each Item shall be the day that the Item has been delivered to and is usable by Lessee as evidenced by an Acceptance Certificate duly executed by Lessee or, in the absence thereof, the Manufacturer's delivery certification. The "Base Term" as indicated on any Schedule shall be the period beginning on the first day of the calendar month following the final Commencement Date ("Final Commencement Date") of the Schedule or, if the Final Commencement Date falls on the first day of a calendar month, then that day, and continuing for the number of months specified on the Schedule. This Lease with respect to any Schedule may be terminated as of the last day of the Base Term by either party giving the other party at least six months but not more than twelve months prior written notice of such termination. Otherwise, the "Term" (as defined below) with respect to any Schedule shall automatically be extended in successive one year intervals ["Extension Term(s)"] at the rental amount in effect as of the last billing cycle of the Base Term. Any such Schedule may be terminated as of the last day of any Extension Term by either party giving the other party at least six months, but not more than twelve months, prior written notice of such termination. Any termination notice given by Lessee shall stipulate whether Lessee chooses to purchase the Equipment or renew the Lease as provided in Section 6. Fair Market Value Purchase Option / Renewal Option, or return the Equipment as provided in Section 7. Return of Equipment. The "Term" of each individual Schedule is hereby defined as the period beginning on the first Commencement Date that occurs with respect to all Items subject to the Schedule and continuing through the Base Term and all Extension Terms, if any. Each Schedule now or in the future annexed hereto shall be deemed to incorporate therein these specific terms and conditions and shall have an independent Term.

4. **RENT:** The monthly rent as shown on each Schedule shall be due and payable by Lessee in the amount of the monthly rent multiplied by the number of months in the billing cycle indicated on the respective Schedule (one month in a monthly billing cycle, three in a quarterly cycle, six in a biannual cycle, etc.) on the first day of the Base Term and on the first day of each billing cycle thereafter, for the remainder of the Term. For Items having a Commencement Date prior to the first day of the Base Term, rent shall be due on a pro rata basis only in the amount of one-thirtieth of the Item's proportional monthly rent for each day from the Item's Commencement Date until, but not including, the first day of the Base Term and shall be payable by Lessee five days after receipt of invoice from Lessor. If any rental or other amounts payable hereunder are not paid within five days of their due date then Lessee shall pay to Lessor upon demand "Delinquency Charges" which shall equal interest compounded monthly at the rate of eighteen percent per annum (or the highest rate allowable by law whichever is less) on the delinquent balance from the date due until the date paid, plus a monthly administrative fee of five percent of the cumulative delinquent balance to offset Lessor's collection and accounting costs. Any deposit paid by Lessee to Lessor shall be refundable if the Schedule is not accepted by Lessor. THIS IS A NET LEASE AND LESSEE'S OBLIGATION TO PAY ALL RENTAL CHARGES AND OTHER AMOUNTS DUE HEREUNDER SHALL BE ABSOLUTE AND UNCONDITIONAL UNDER ALL CIRCUMSTANCES AND SHALL NOT BE SUBJECT TO ANY ABATEMENT, DEFENSE, COUNTERCLAIM, SETOFF, RECOUPMENT OR REDUCTION FOR ANY REASON WHATSOEVER EXCEPT AS OTHERWISE PROVIDED HEREIN, IT BEING THE EXPRESS INTENT OF LESSOR AND LESSEE THAT ALL RENTAL AND OTHER AMOUNTS PAYABLE BY LESSEE HEREUNDER SHALL BE AND CONTINUE TO BE PAYABLE IN ALL EVENTS. LESSEE HEREBY WAIVES ALL RIGHTS IT MAY HAVE TO REJECT OR CANCEL THIS LEASE, TO REVOKE ACCEPTANCE OF ANY OF THE EQUIPMENT, AND/OR TO GRANT A SECURITY INTEREST IN ANY OF THE EQUIPMENT FOR ANY REASON EXCEPT AS REQUIRED HEREIN.

5. **USE, MAINTENANCE AND LOCATION:** Lessee at its own expense shall properly use the Equipment, keep the Equipment in good working order, repair and condition, comply with all Manufacturer's instructions as to use and operation, and comply with all applicable laws, rules, regulations or orders of any governmental agency with respect to the use, operation, maintenance, care, storage, or location of the Equipment. During the Term, Lessee shall keep in force the best standard maintenance agreement with the Manufacturer, or such other qualified party including qualified self-maintenance by Lessee, as is reasonably acceptable to Lessor, that will ensure: the Equipment is maintained to all current engineering specifications; all repairs, adjustments and replacements are properly made; and all upgrades, enhancements and changes that are available from time to time from the Manufacturer are made to the Equipment. Lessee shall not relocate the Equipment

CELTIC LEASING CORP. (CMLN 3/03)

Initials: _NV_ /_HK_  

EXHIBIT __A__
Page __1__ of __4__

without Lessor's prior written consent. Lessee shall pay all costs associated with the delivery, installation, use, relocation, and Lessor's inspection of the Equipment. If Lessor requests, Lessee shall affix in a prominent place labels or tags to the Equipment stating that the Equipment is owned by Lessor. Lessee shall permit Lessor to inspect the Equipment from time to time as reasonably determined by Lessor.

**6. FAIR MARKET VALUE PURCHASE OPTION / RENEWAL OPTION:** Lessee may purchase, or renew this Lease for, all but not less than all of the Equipment subject to any Schedule, provided Lessee is not in default and upon proper written notification to Lessor, as of the expiration of the Term of said Schedule. In the event Lessee notifies Lessor it elects to purchase the Equipment, the purchase price shall be the "Fair Market Value" of the Equipment. For the purpose of this Lease, "Fair Market Value" is defined as the total cost(s) it would take to replace the Equipment on an in-place, installed basis, including all current cost(s) and expense(s) for the purchase, assembly, installation, delivery, freight, consulting, training, site preparation and any other services that would be required to render such Equipment fully installed, ready and acceptable for use by an end user as of the termination of the Term. If Lessor and Lessee can not agree on a purchase price then the purchase price shall be determined by the average of two Senior Appraisers accredited by the American Society of Appraisers, one chosen by Lessor and one by Lessee, both using the definition of Fair Market Value hereunder in determining their purchase price, the cost of which shall be borne by Lessee. In the event Lessee notifies Lessor it elects to renew, the renewal shall be based upon the Fair Market Value of the Equipment, the then prevailing market conditions, Lessee's credit worthiness and such other terms and conditions to be mutually agreed upon by Lessee and Lessor. If Lessee has properly elected to purchase or renew any given Schedule, but neither a Fair Market Value purchase price nor the terms and conditions of a renewal have been determined at least thirty days prior to the expiration of the Term, then the Term of the Schedule shall continue on a month to month basis at the rental that was in effect at the end of the Base Term, until such time that either a Fair Market Value purchase price or the terms and conditions of a renewal have been determined.

**7. RETURN OF EQUIPMENT:** If the Equipment is to be returned upon termination of the Term with respect to any Schedule or if for any other reason, Lessee shall immediately discontinue all use of the Equipment and at its own cost, de-install, pack and ship the Equipment to a location(s) within the United States, all in accordance with instructions provided by Lessor. In the case of Equipment which is software, Lessee will also certify in a written form acceptable to Lessor that: (i) all tangible software has been delivered to Lessor; (ii) all tangible records and intangible software have been destroyed; (iii) Lessee has not retained the software in any form; (iv) Lessee will not use the software after termination; and (v) Lessee has not received from Manufacturer anything of value relating to or in exchange for Lessee's use, rental, or possession of the software during the duration of the Lease (including a trade-in, substitution or upgrade allowance). Upon return of the Equipment, Lessee shall take all actions necessary to ensure that the Equipment will be eligible for the best standard Manufacturer Maintenance Contract and shall pay all fees, charges and expenses for maintenance certification or recertification by the Manufacturer and for all costs for repair or replacement of damaged Equipment. Until Lessee has complied with all of the requirements of this Section, rent payment obligations will continue on a month to month basis at the monthly rent delineated on the Schedule. Lessee shall allow Lessor to inspect, at Lessee's cost, all of Lessee's locations to ensure compliance hereunder.

**8. TITLE; PERSONAL PROPERTY:** Except as otherwise provided in this Lease or any Schedule, title to the Equipment shall remain in Lessor. Lessee shall at all times keep the Equipment free and clear of all liens, claims, levies, and legal processes, and shall at its expense protect and defend Lessor's title and/or license rights in the Equipment. In the event any of the Equipment is software governed by a software license, Lessee shall keep said license current for the entire Term and, to the extent the license allows title to the software to pass to licensee, such title shall vest and remain in Lessor. Lessee acknowledges that the license to use the software is being provided by the Manufacturer solely because of payments made by Lessor and in consideration therefor Lessor has obtained Lessee's interest in the License. Lessee forgoes any future claim to the software, including any right to purchase and/or use the software beyond the Term, except as otherwise provided in this Lease. Lessee hereby agrees and does hereby appoint Lessor or its assigns its true and lawful attorney-in-fact to prepare UCC's or other instruments necessary, and authorizes Lessor to cause this Lease or other instruments in Lessor's determination, to be filed or recorded at Lessee's expense in order to protect Lessor's interest in the Equipment, and grants Lessor the right to execute and deliver such instruments for and on behalf of Lessee. If requested by Lessor, then Lessee agrees to execute and deliver any such instruments and agrees to pay or reimburse Lessor for any searches, filings, recordings, inspections, fees, taxes or any other costs incurred as necessary to protect Lessor's interest in the Equipment. Lessee also authorizes Lessor to insert on any Schedule and on related supplemental lease documentation information commonly determined after execution by Lessee such as: serial numbers and other Equipment identification data, Equipment locations, Commencement Dates, and Final Commencement Date. Lessee shall take all steps necessary to ensure that the Equipment is and remains personal property.

**9. ALTERATIONS:** Lessee shall make no alterations, modifications, attachments, improvements, enhancements, revisions or additions to any of the Equipment (collectively called "Alterations"), without Lessor's prior written consent. All Alterations that are made shall become part of the Equipment and shall be the property of Lessor. Equipment which is software shall include all updates, revisions, upgrades, new versions, enhancements, modifications, derivative works, maintenance fixes, translations, adaptations, and copies of the foregoing or of the original version of the software whether obtained from the Manufacturer or from any source whatsoever, and references in this Lease to software will be interpreted as references to any and all of the foregoing.

**10. TAXES:** Lessee shall pay all fees, assessments and taxes (except for income taxes based solely on Lessor's net income assessed by the U.S. Internal Revenue Service and/or any member State of the United States of America), including but not limited to, sales, use, property, excise, intangibles, single business, stamp, documentary and any other costs imposed by any authority, with respect to the use, delivery, rental/lease, possession, purchase, ownership or sale of the Equipment and shall at its own cost and expense keep the Equipment free and clear of all levies, liens or encumbrances arising therefrom. Lessee shall file all required personal property tax returns relating to the Equipment. In the event Lessor files appropriate property tax returns or other reports, Lessee shall upon demand immediately reimburse Lessor for all amounts paid by Lessor, plus processing costs.

**11. LOSS OR DAMAGE:** Lessee shall bear the entire risk of loss, damage, theft, destruction, confiscation, requisition, inoperability, erasure, or incapacity, for or from any cause whatsoever, of any or all Items during the period the Equipment is in transit to or from, or in the possession of, Lessee ("Event of Loss") and shall hold Lessor harmless against same. Immediately upon its discovery, Lessee shall fully inform Lessor of an Event of Loss. Except as provided herein, no Event of Loss shall relieve Lessee of any obligation hereunder, and all Schedules shall remain in full force and effect without any abatement or interruption of rent. In an Event of Loss, Lessee at its option provided no event of default has occurred hereunder, shall: (a) continue to timely make all rental payments and pay all other amounts due under the Lease and, within a commercially expedient time frame, place the Equipment in good working order, repair and condition, or replace the affected Equipment with identical equipment with documentation creating clear title thereto in Lessor; or (b) terminate the Lease with respect to the affected Schedule by paying to Lessor within thirty days the "Casualty Value" which is defined as the sum of: (i) the present value of the unpaid balance of the aggregate rent reserved under the related Schedule calculated using a discount rate of three percent per annum, plus (ii) all accrued but unpaid rentals, taxes, Delinquency Charges, penalties, interest and all or any other sums then due and owing under the related Schedule, plus (iii) the amount of any applicable end of Term purchase option or other end of Term payment or, in the absence thereof, the Fair Market Value of the Equipment, plus (iv) an amount reasonably determined by Lessor to make Lessor whole on an after tax basis for any loss, recapture, or unavailability of any tax credit and/or deduction.

Initials: _[signatures]_

CELTIC LEASING CORP. (CMLN 3/03)

EXHIBIT A
Page 2 Of 4

12. **INSURANCE:** Lessee, at its expense, shall provide and maintain in full force and effect at all times that this Lease is in force such casualty, property damage, comprehensive public liability and other insurance in such form and amounts as is and with such companies as shall be satisfactory to Lessor. All such insurance shall provide that it may not be canceled or materially altered without at least thirty days prior written notice to Lessor, shall name Lessor as additional insured and loss payee, and shall not be rescinded, impaired or invalidated by any act or neglect of Lessee.

13. **INDEMNITY:** Lessee shall indemnify, defend, protect, save and hold harmless Lessor, its employees, officers, directors, agents, assigns and successors from and against any and all claims, actions, costs, expenses (including reasonable attorneys' fees), damages (including any interruption of service, loss of business or other consequential damages), liabilities, penalties, losses, obligations, injuries, demands and liens (including any of the foregoing arising or imposed under the doctrines of "strict liability" or "product liability") of any kind or nature arising out of, connected with, relating to or resulting from the manufacture, purchase, sale, lease, ownership, installation, location, maintenance, operation, condition (including latent and other defects, whether or not discoverable), selection, delivery, return, or any accident in connection therewith, of any Item or Items of Equipment, or by operation of law (including any claim for patent, trademark or copyright infringement), regardless of where, how or by whom operated. The provisions of this paragraph shall survive termination or expiration of this Lease.

14. **AUTHORITY OF LESSEE TO ENTER LEASE:** With respect to this Lease and each Schedule now or in the future annexed hereto, Lessee hereby represents, warrants and covenants that: (i) the execution, delivery and performance thereof have been duly authorized by Lessee; (ii) the individuals executing such have been duly authorized to do so; (iii) the execution and/or performance thereof will not result in any default under, or breach of, any judgment, order, law or regulation applicable to Lessee, or of any provision of Lessee's articles of incorporation, bylaws, or any agreement to which Lessee is a party; and (iv) all financial statements and other information submitted by Lessee herewith or at any other time is true and correct without any misleading omissions.

15. **ASSIGNMENT:** Lessee hereby agrees and acknowledges that Lessor may without notice to Lessee, assign all or any part of Lessor's rights, title and interest in and to this Lease, any Schedule, the Equipment, and any of the rentals or other sums payable hereunder, to any assignee ("Assignee") provided any such assignment shall be made subject to the rights of Lessee herein. Lessee hereby acknowledges that any such assignment does not change the duties of, nor the burden of risk imposed on the Lessee and that Lessee shall not look to Assignee to perform any of Lessor's obligations hereunder and shall not assert against Assignee any defense, counterclaim or setoff it may have against Lessor. Lessee agrees that after receipt of written notice from Lessor of any such assignment Lessee shall pay, if directed by Lessor, any assigned rental and other sums payable hereunder directly to Assignee and will execute and deliver to Assignee such documents as Assignee may reasonably request in order to confirm the interest of Assignee in this Lease. **WITHOUT LESSOR'S PRIOR WRITTEN CONSENT, LESSEE SHALL NOT ASSIGN, TRANSFER, ENCUMBER, SUBLET OR SELL THIS LEASE, ANY SCHEDULE, ANY OF THE EQUIPMENT, OR ANY OF ITS INTEREST THEREIN, IN ANY FORM OR MANNER.**

16. **FURTHER ASSURANCES:** Upon Lessor's request, Lessee, promptly and at its expense, shall execute and/or deliver such documents, instruments and/or assurances, and shall take such further action, as Lessor deems prudent in order to establish and/or protect the rights, interests and remedies of Lessor, and for the confirmation, assignment and/or perfection of this Lease and any Schedule hereto, and for the assurance of performance of Lessee's obligations hereunder, such as (but not limited to): a secretary's certificate certifying the authority of the person(s) signing, and/or the resolutions authorizing, this Lease and/or any Schedule; delivery and/or acceptance certificates; insurance certificates; an opinion of Lessee's counsel; financial statements and other credit information as reasonably requested by Lessor; intercreditor agreements; subordinations; and a landlord/mortgagee waiver of rights and interests in the Equipment. If Lessee fails to complete when due any such requested item, Lessor, at its sole discretion and notwithstanding the provisions of Section 3. Term herein, may elect to delay the Final Commencement Date of the affected Schedule until any or all such requested items are completed. Until duly executed by an authorized officer of Lessor, Lessee agrees that this Lease and any Schedule executed by Lessee shall constitute an offer by Lessee to enter into the Lease with Lessor.

17. **DEFAULT:** The occurrence of any of the following shall constitute an event of default hereunder ("Event of Default"): (a) Lessee fails to pay when due any installment of rent or any other amount due hereunder and such failure continues for a period of ten days after receipt of written notice thereof; (b) any financial or other information or any other representation or warranty given to Lessor herein or in connection herewith (including information provided by or on behalf of any Guarantor), proves to be false or misleading; (c) Lessee assigns, transfers, encumbers, sublets or sells this Lease, any Schedule, any of the Equipment, or any of its interest therein, in any form or manner, without Lessor's prior written consent; (d) Lessee fails to observe or perform any other covenant, condition or obligation to be observed or performed by it under this Lease and such failure continues for a period of fifteen days after receipt of written notice thereof; (e) any transaction or series of transactions that results in an ownership change of fifty percent or more of the equity interests of Lessee or any Guarantor of this Lease; (f) Lessee or any Guarantor of this Lease consolidates with or merges into, or sells or leases fifty percent or more of its assets to any individual, corporation, or other entity; (g) Lessee, or any Guarantor of this Lease, ceases doing business as a going concern, dies, makes an assignment for the benefit of creditors, admits in writing its insolvency, files a voluntary petition in bankruptcy, is adjudicated bankrupt or insolvent, files a petition seeking for itself any reorganization, liquidation, dissolution or similar arrangement under any present or future statute, law or regulation, or files an answer admitting the material allegations of a petition filed against it in any such proceedings, consents to or acquiesces in the appointment of a trustee, receiver, or liquidator of it or of any substantial part of its assets, or if its shareholders take any action looking to its dissolution or liquidation; or (h) within sixty days after the commencement of any proceeding against Lessee or any Guarantor of this Lease, seeking reorganization, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such proceedings shall not have been dismissed, or if within sixty days after the appointment without Lessee's consent or acquiescence of any trustee, receiver or liquidator of it or of any substantial part of its assets, such appointment shall not be vacated.

18. **REMEDIES:** If an Event of Default shall occur, Lessor may, in addition to all available remedies it may have at law or in equity, do any or all of the following: (a) proceed, by appropriate court action, to enforce performance by Lessee of the applicable covenants of this Lease and to recover damages for the breach thereof; (b) by written notice to Lessee, terminate this Lease and/or all or any Schedules hereto and Lessee's rights hereunder and/or thereunder; (c) personally or by its agents enter the premises where any of the Equipment is located and take immediate possession of the Equipment without court order or other process of law and free from all claims by Lessee; (d) nullify any end of Term purchase or renewal option; and/or (e) recover all unpaid amounts then due and owing including applicable late charges, plus, as liquidated damages for loss of a bargain and not as a penalty, accelerate and declare to be immediately due and payable the unpaid balance of the aggregate rent and other sums reserved hereunder plus the Fair Market Value of the Equipment, without any presentment, demand, protest or further notice (all of which are expressly waived by Lessee). In the event Lessor repossesses any of the Equipment, Lessor may sell, lease or otherwise dispose of said Equipment in such manner, at such times, and upon such terms as Lessor may reasonably determine. If Lessor does repossess and sell the Equipment, the proceeds thereof shall be applied to: (i) all costs and expenses (including attorney's fees) of such disposition; (ii) the unpaid accrued rentals, taxes, fees, delinquency charges, interest and all or any other sums due and owing; (iii) the unpaid accelerated rentals; and (iv) the Fair Market Value of the Equipment. Any excess proceeds shall be remitted to Lessee. If Lessor re-leases the Equipment, the re-lease rentals received for the period through the end of the

CELTIC LEASING CORP. (CMLN 3/03)　　　　　　　　　　Initials: _____

EXHIBIT A
Page 3 of 4

original Base Term of the Lease shall be first applied as described in (i), (ii), (iii), and (iv), above, with any excess to be remitted to the Lessee. The exercise of any of the foregoing remedies by Lessor shall not constitute a termination of the Lease or of any Schedule unless Lessor so notifies Lessee in writing. All remedies of Lessor shall be deemed cumulative and may be exercised concurrently or separately. The waiver by Lessor of any breach of any obligation of Lessee shall not be deemed a waiver of a breach of any other obligation or of any future breach of the same obligation. The subsequent acceptance of rental payments hereunder by Lessor shall not be deemed a waiver of any prior or existing breach by Lessee regardless of Lessor's knowledge of such breach. If any Schedule is deemed at any time to be a lease intended as security, Lessee grants Lessor a security interest in the Equipment to secure its obligations under this Lease and all other indebtedness at any time owing by Lessee to Lessor. Lessee agrees that upon the occurrence of an Event of Default, in addition to all of the other rights and remedies available to Lessor hereunder, Lessor shall have all of the rights and remedies of a secured party under the Uniform Commercial Code.

**19. PERFORMANCE OF LESSEE'S OBLIGATIONS BY LESSOR:** If Lessee fails to perform any of its obligations hereunder, Lessor shall have the right, but shall not be obligated, to perform the same for the account of Lessee without thereby waiving Lessee's default. Any amount paid and any expense, penalty or other liability incurred by Lessor in such performance shall become due and payable by Lessee to Lessor upon demand.

**20. PURCHASE AGREEMENTS:** In the event any of the Equipment is subject to any acquisition or purchase agreement ("Acquisition Agreement") between Lessee and the Manufacturer, then Lessee, as part of this Lease when approved by Lessor, transfers and assigns to Lessor any and all of Lessee's rights, title and interest (excepting that which is inherent to or granted by this Lease), but none of its obligations (except Lessee's obligation to pay for the Equipment, which Lessor shall do after Lessee's acceptance of the Equipment, provided all documentation required by Lessor has been completed and that Lessor's approval remains valid), in and to the Acquisition Agreement(s) and the subject Equipment. IN THE EVENT LESSEE ISSUES A PURCHASE ORDER TO LESSOR WITH RESPECT TO THIS LEASE, ANY SCHEDULE, OR ANY OF THE EQUIPMENT, IT IS AGREED THAT ANY SUCH PURCHASE ORDER IS FOR LESSEE'S INTERNAL PURPOSES ONLY AND THAT NONE OF ITS TERMS AND CONDITIONS SHALL MODIFY THIS LEASE OR ANY RELATED DOCUMENTATION, OR AFFECT EITHER PARTIES' RESPONSIBILITIES AS SET FORTH IN THIS LEASE.

**21. NOTICES:** All notices hereunder shall be in writing and shall be given by personal delivery or sent by certified mail, return receipt requested, or reputable overnight courier service, postage/expense prepaid, to the address of the other party as set forth herein or to any later address last known to the sender. All notices to Lessor shall be addressed to the attention of Vice President, Contracts, and must be executed by an authorized officer of Lessee to be effective. Notice shall be effective upon signed receipt or other evidence of delivery.

**22. APPLICABLE LAW / ARBITRATION:** The parties agree that any action brought to enforce any of the terms, or to recover for any breach, whether based in tort, contract or otherwise, relating to or arising out of this Lease (collectively, "Lease Disputes") will be submitted to the Orange County, California, office of JAMS/Endispute LLC ("JAMS"), for a trial of all issues of law and fact conducted by a retired judge or justice from the panel of JAMS, appointed pursuant to a general reference under California Code of Civil Procedure, Section 638(1) (or any amendment, addition or successor section thereto) unless Lessor or its Assignee selects an alternative forum. If the parties are unable to agree on a member of the JAMS panel, then one shall be appointed by the presiding Judge of the California Superior Court for the County of Orange. In the event that JAMS in the County of Orange ceases to exist, then the parties agree that all Lease Disputes will be filed and conducted in the appropriate court having jurisdiction in the County of Orange, unless Lessor or its Assignee selects an alternative forum. Lessee agrees to submit to the personal jurisdiction of the appropriate California Court for all Lease Disputes. Lessee waives its rights to a jury trial in any action arising out of or relating to this Lease. The prevailing party in any Lease Disputes is entitled to recover from the other party reasonable attorney's fees and costs, including all JAMS related costs and costs of collection (including judgment enforcement and collection costs). This Lease has been entered into and shall be performed in California and, therefore, this Lease shall be construed in accordance with and shall be governed by, the internal substantive laws of the State of California (exclusive of principles of conflict of laws). TIME IS OF THE ESSENCE.

**23. GENERAL:** Neither this Lease nor any Schedule shall bind Lessor in any manner, and no obligation of Lessor shall arise, until the respective instrument is duly executed by an authorized officer of Lessor. If more than one Lessee is named in this Lease or there is a Guarantor of this Lease, the liability of each shall be joint and several. This Lease and each Schedule shall inure to the benefit of and be binding upon Lessor, Lessee and their respective successors except as expressly provided for herein. All representations, warranties, indemnities and covenants contained herein, or in any document now or at any other time delivered in connection herewith, which by their nature would continue beyond the termination or expiration of this Lease, shall continue in full force and effect and shall survive the termination or expiration of this Lease.

**24. ENTIRE AGREEMENT:** THIS LEASE, TOGETHER WITH ALL DULY EXECUTED SCHEDULES, CONSTITUTES THE ENTIRE AGREEMENT BETWEEN LESSEE AND LESSOR WITH RESPECT TO THE EQUIPMENT AND SHALL SUPERSEDE ANY AND ALL PRIOR PROPOSALS, NEGOTIATIONS AND/OR OTHER COMMUNICATIONS, ORAL OR WRITTEN. NO MODIFICATION TO THIS AGREEMENT SHALL BE EFFECTIVE UNLESS MADE IN WRITING AND DULY EXECUTED BY LESSEE AND AN AUTHORIZED OFFICER OF LESSOR. NO ORAL OR WRITTEN GUARANTY, PROMISE, CONDITION, REPRESENTATION OR WARRANTY SHALL BE BINDING UNLESS MADE A PART OF THIS LEASE BY DULY EXECUTED ADDENDUM. UNLESS SPECIFIED OTHERWISE, IN THE EVENT ANY SUCH DULY EXECUTED MODIFICATION IS ATTACHED TO AND MADE A PART OF ANY SPECIFIC SCHEDULE, THE TERMS AND CONDITIONS OF SUCH MODIFICATION SHALL APPLY ONLY TO THAT SPECIFIC SCHEDULE AND SHALL NOT APPLY TO ANY OTHER SCHEDULE.

PLEASE INITIAL BELOW TO CERTIFY YOUR ACKNOWLEDGMENT AND AGREEMENT THAT NO MODIFICATION TO THIS LEASE SHALL BE EFFECTIVE UNLESS IN WRITING AND SIGNED BY LESSEE AND AN AUTHORIZED OFFICER OF LESSOR.

Lessee Initials: _____　　　　Lessor Initials: _____

Lessee: Tulare Local Health Care District　　　Lessor: CELTIC LEASING CORP.
Signature: _____　　　　　　　　　　　　　　　Signature: _____
Name: Alan W. Germany / BENNY BENZEEVI, MD　　Name: Michael J. Purcell
Title: CFO/COO　　　　　　CEO　　　　　　　　Title: Executive Vice President
Date Offered: 8/23/17　　　　　　　　　　　　　Date Accepted: 08/24/17

CELTIC LEASING CORP. (CMLN 3/03)



# ORGANIZATION CERTIFICATE

THE UNDERSIGNED DOES HEREBY CERTIFY that: (a) I am an officer of <u>Tulare Local Health Care District</u>, an organization duly organized and validly existing under the laws of the state of <u>California</u>; and (b) that the persons whose names and signatures appear below are, and have been at all times, duly qualified and authorized to execute, on behalf of this organization, any and all documents and instruments in connection with the lease, purchase, sale or other disposition of personal property from or to CELTIC LEASING CORP. including, but not limited to, Master Leases, Lease Schedules, Purchase and Sale Agreements, and other documents relating thereto.

| NAME | TITLE | SIGNATURE |
|---|---|---|
| Benny Benzeevi, MD | CEO | /s/ |
|  |  |  |
|  |  |  |

IN WITNESS WHEREOF, the undersigned officer has executed this Certificate on the date set forth below.

Signature: /s/
(OF CERTIFYING OFFICER)
Name: Alan W. Germany
(PRINT OR TYPE)
Title: CFO/COO
(OFFICER TITLE--PREFERABLY SECRETARY OR ASST. SEC.)
Date: 8/30/17

L:\CC000

EXHIBIT B
Page 1 Of 1

Filed 02/07/18    Case 18-01008    Doc 6



# CELTIC LEASING CORP.—Lessor
4 Park Plaza, Suite 300, Irvine, California 92614 . (949) 263-3880 . FAX: (949) 263-1331

## INSURANCE AUTHORIZATION

August 22, 2017

**Tulare Local Health Care District—Lessee**
869 North Cherry St.
Tulare, CA 93274

RE: Leased Property now or in the future subject to Celtic Master Lease No. CML-3826A (the "Agreement").

Gentlemen:

Please type or print clearly the following information with respect to your insurance coverage and sign below to authorize us to obtain Certificates of Insurance covering the equipment subject to the above referenced Agreement naming Celtic Leasing Corp.--and our assignee, if any--as Co-Loss Payee(s) on the Physical Damage Insurance and Additional Insured(s) on the Liability Coverage:

| PROPERTY/CASUALTY: | LIABILITY: |
|---|---|
| Beta Healthcare Group | Beta Healthcare Group |
| Insurance Company/Agent | Insurance Company/Agent |
| 9171 Towne Centre Drive, Suite 500 | 9171 Towne Centre Drive, Suite 500 |
| Street Address | Street Address |
| San Diego, CA 92122 | San Diego, CA 92122 |
| City, State, Zip | City, State, Zip |
| Jim Gonzales | Jim Gonzales |
| Contact | Contact |
| (858) 550-1147 | (858) 550-1147 |
| Phone Number | Phone Number |
| (858) 909-9609 | (858) 909-9609 |
| Fax Number | Fax Number |
| jim.Gonzales@marshmma.com | jim.Gonzales@marshmma.com |
| Email Address | Email Address |

Please call the undersigned at 949-263-3880, x1051, if you have any questions. Thank you for your assistance.

Sincerely,
CELTIC LEASING CORP.

Britney Brumley
Assistant Documentation Administrator

INSURANCE REQUEST CONFIRMED AND AUTHORIZED:
Tulare Local Health Care District
Signature: [signature]
Name: Alan W. Germany | BENNY BENZEEVI, MD
Title: CFO/COO         CEO
Date: 8/23/17

/bb

L:\AANYDS

EXHIBIT C
Page 1 Of 1



# CELTIC

**LEASE SCHEDULE No. 3826A01**　　ANNEXED TO AND MADE A PART OF MASTER
**CELTIC LEASING CORP. — Lessor**　　LEASE NO. CML-3826A DATED 08/24/17

4 PARK PLAZA, SUITE 300, IRVINE, CALIFORNIA 92614 • (949) 263-3880 • FAX: (949) 263-1331

Lessee: **Tulare Local Health Care District**
Corporate
Address: 869 North Cherry St., Tulare, CA 93274
Contact: Alan W. Germany　　Title: CFO/COO　　Phone No. 859-688-5235
Equipment
Location: Same As Above

Contact: Alan W. Germany　　Title: CFO/COO　　Phone No. 859-688-5235

This Schedule is issued pursuant to the Master Lease referenced above between Lessee and Lessor. All of the terms and conditions of the Master Lease are incorporated herein and made a part hereof as if such terms and conditions were set forth in this Schedule. By their execution and delivery of this Schedule, the parties hereby reaffirm all of the terms and conditions of the Master Lease. In the event Lessee returns the Equipment subject to this Schedule in accordance with the terms of the Master Lease, Lessee shall pay to Lessor a restocking fee equal to seven percent of the original Equipment cost.

Equipment Leased:
**ITEM　QTY　SERIAL NO.**　　　　　　　　**DESCRIPTION**

VENDOR(S): to be determined

1.-?　various　　Items of Equipment expected to include: miscellaneous medical equipment, and/or other related and/or accessory property. Items 1. and on shall be enumerated and described in further detail, including location and vendor name, at a later date on the related applicable Acceptance Certificate(s).

NOTE: Equipment cost to Lessor not to exceed: $3,000,000.00

| MONTHLY RENT | BASE TERM IN MONTHS | DEPOSIT APPLIED TO LAST BILLING CYCLE | BILLING CYCLE | FINAL COMMENCEMENT DATE |
|---|---|---|---|---|
| $82,026.00 (PLUS APPLICABLE TAXES) | 36 | ONE MONTH'S RENT | [X] MONTHLY  [ ] QUARTERLY  [ ] BIANNUALLY  [ ] ANNUALLY | August 31, 2017 |

By execution hereof, the parties hereby reaffirm their acknowledgment and agreement that no modification to this Lease shall be effective unless in writing and signed by Lessee and an authorized officer of Lessor.

**OFFER**　　　　　　　　　　**ACCEPTANCE**

Lessee: Tulare Local Health Care District　　Lessor: CELTIC LEASING CORP.
Signature: _____　　　　　　Signature: _____
Name: Alan W. Germany / BENNY BENZEEVI, MD　　Name: Michael J. Purcell
Title: CFO/COO / CEO　　　　　　　　　　Title: Executive Vice President
Date: 8/23/17　　　　　　　　　　　　　Date: 08/24/17

LS　　　　　　　　　　　　　　　　　1991 CELTIC LEASING CORP. (CMLS 2/93)

EXHIBIT D
Page 1 Of 1



Addendum "A"
to
Lease Schedule No. <u>3826A01</u> (the "Schedule"),
to
Master Lease No. <u>CML-3826A</u> ("Master Lease"),
by and between
CELTIC LEASING CORP., as Lessor,
and
<u>Tulare Local Health Care District</u>, as Lessee

Lessee warrants to Celtic Leasing Corp. ("Lessor") that it has funds available to pay all rents (the "Lease Payments") payable under the above - identified Lease until the end of Lessee's current appropriation periods. If Lessee's legislative body or other funding authority does not appropriate funds for Lease Payments for any subsequent appropriation period and Lessee does not otherwise have funds available to lawfully pay the Lease Payments (a "Non-Appropriation Event") Lessee may, subject to the conditions herein and upon prior written notice to Lessor (the 'Non-Appropriation Notice"), effective 60 days after the later of Lessor's receipt of same or the end of the Lessee's current appropriation period (the "Non-Appropriation Date"), terminate the Lease and be released of its obligation to make all Lease Payments due Lessor coming due after the Non-Appropriation Date. As a condition to exercising its rights under the Addendum Lessee shall (1) reasonably demonstrate, to Lessor's satisfaction, that Lessee has used its best efforts to obtain continued appropriation from Lessee's legislative body or other funding authority, (2) provide in the Non-Appropriation Notice a certification of a responsible official that a Non-Appropriation Event has occurred, (3) deliver to Lessor an opinion of Lessee's counsel (addressed to Lessor) verifying that the Non-Appropriation Event as set forth in the Non-Appropriation Notice has occurred, (4) return the equipment subject to the Lease (the "Equipment") on or before the Non-Appropriation Date to Lessor or a location designated by Lessor, in the condition required by, and in accordance with the return provisions of, the Lease and at Lessee's expense, and (5) pay Lessor all sums payable to Lessor under the Lease up to the Non-Appropriation Date.

In the event of any Non-Appropriation Event, Lessor shall retain all sums paid hereunder or under the Lease by Lessee, including the Security Deposit (if any) specified in the Lease.

This Addendum is not intended to permit Lessee to terminate the Lease at will or for convenience.

YOU AGREE THAT A FACSIMILE COPY OF THIS DOCUMENT WITH FACSIMILE SIGNATURES MAY BE TREATED AS AN ORIGINAL AND WILL BE ADMISSIBLE AS EVIDENCE IN A COURT OF LAW.

| Lessee: Tulare Local Health Care District | Lessor: CELTIC LEASING CORP. |
|---|---|
| By: *[signature]* /BENNY BENZEEV, MD | By: *[signature]* |
| Name: Alan W. Germany / CEO | Name: Michael J. Purcell |
| Title: CFO/COO | Title: Executive Vice President |
| Date: 8/23/17 | Date: 08/24/17 |

SusqNonAppropriationAdd

EXHIBIT E
Page 1 Of 1



4 Park Plaza, Suite 500
Irvine, CA 92614

TEL: 949.263.5580
FAX: 949.263.1331

info@celticleasing.com
www.celticleasing.com

August 30, 2017

**Tulare Local Health Care District**
869 North Cherry Street
Tulare, CA 93274

RE: Lease Schedule No. <u>3826A01</u> (the "Schedule"), to Master Lease No. <u>CML-3826A</u> (the "Lease"), by and between Lessor and Lessee, and all duly executed supplemental documentation relating to said Lease and Schedule (collectively, the Lease, the Schedule, and all related supplemental documentation, is herein referred to as the "Transaction").

Gentlemen and/or Ladies:

Notwithstanding anything to the contrary contained in the above referenced Transaction, and to the limited extent hereof, this Letter Agreement amends and supersedes said Transaction and is hereby incorporated by reference therein.

It is hereby acknowledged that Equipment Items 1.-? as set forth on said Schedule consists of Items 1.-77, as described on the applicable Acceptance Certificate(s).

In all other respects, the terms of the Transaction as currently set forth shall remain in full force and effect. Please acknowledge your acceptance of this Letter Agreement by your authorized signature below and return the original to Celtic Leasing Corp.

Sincerely,
CELTIC LEASING CORP.

Michael J. Purcell
Executive Vice President

MJP/kg

ACKNOWLEDGED AND AGREED:
Tulare Local Health Care District

By: _____
Name: <u>Benny Benzeevi, MD</u>
Title: <u>CEO</u>    Date: <u>8.30.2017</u>

L:\LACLOSE1     THE PERSONAL SIDE OF BUSINESS

EXHIBIT <u>F</u>
Page <u>1</u> Of- <u>1</u>



# CELTIC
## ACCEPTANCE CERTIFICATE

TO LEASE SCHEDULE NO. <u>3826A01</u> ANNEXED TO AND
MADE A PART OF MASTER LEASE NO. CML-<u>3826A</u>

Lessee:    <u>Tulare Local Health Care District</u>

Lessee hereby certifies that, pursuant to the Lease Schedule and Master Lease referenced above, the Items of Equipment set forth below, as are enumerated and further described in the related Lease Schedule, have been, as of the indicated Commencement Date, delivered to, inspected by, found to be in good order and accepted by Lessee as ready for use, and billing pursuant to the Lease is appropriate. Lessee understands that Lessor is relying on this certification in making payment for the Items listed below. <u>Lessee and Lessor agree that the copy of this originally signed Acceptance Certificate Lessee delivers to Lessor by facsimile transmission or e-mail shall constitute the original of the Acceptance Certificate for all purposes under the Lease</u>.

| ITEM(S) | QTY | COMMENCEMENT DATE | ADDITIONAL DESCRIPTION INCLUDING SERIAL NO. AND LOCATION (necessary only if information on the related Lease Schedule is insufficient) |
|---|---|---|---|
| 1.-77. | ALL | DATE OF FUNDING | Lessee hereby acknowledges acceptance of the indicated Items of Equipment as of the signature date set forth below; however, due to the Purchase/ Leaseback nature of the Equipment, the Commencement Date shall be the actual date of funding for these Items by Lessor or Lessor's assignee. |

ACCEPTED BY:

Lessee:    <u>Tulare Local Health Care District</u>

Signature: _____

Name:    <u>Benny Benzeevi, MD</u>

Title:    <u>CEO</u>     Date: <u>8-30-17</u>

1991 CELTIC LEASING CORP. (CMLAC 2/93)

EXHIBIT <u>G</u>
Page <u>1</u> Of- <u>1</u>



# CELTIC

**PURCHASE/LEASEBACK AGREEMENT and BILL OF SALE**

RE: Lease No. __CML-3826A__ / Schedule No. __3826A01__

**CELTIC LEASING CORP.**—Lessor/Purchaser

4 PARK PLAZA, SUITE 300 • IRVINE, CALIFORNIA 92614 • (949) 263-3880 • FAX: (949) 263-1331

Lessee/Seller: __Tulare Local Health Care District__

Corporate Address: __869 North Cherry St., Tulare, CA 93274__

Contact: __Alan W. Germany__    Title: __CFO/COO__    Phone No.: __(859) 688-5235__

Equipment Location: __Various Locations__

This Agreement is to acknowledge that the above named Lessee/Seller (herein referred to as "Seller") agrees to sell and Celtic Leasing Corp. (herein referred to as "Purchaser") agrees to purchase the below listed equipment (the "Equipment") which is subject to the above referenced lease and schedule (the "Lease") by and between Seller and Purchaser as Lessee and Lessor, respectively:

**Equipment:**

| ITEM | QTY | DESCRIPTION | PRICE |
|---|---|---|---|
| | | AS SET FORTH ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF, CONSISTING OF 02 PAGE(S). | $ 3,000,000.00 |

NOTE: The item(s) described above represent(s) Equipment Item(s) 1.-77. to said Lease.

Purchaser shall pay to Seller the aggregate price listed above. Seller represents and warrants that it has good and merchantable title to the Equipment free and clear of all adverse liens and encumbrances and Seller covenants and agrees to defend same against any and all adverse claims and demands. Seller acknowledges that it is responsible for any and all sales/use tax relating to the Equipment.

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Seller hereby sells, transfers, grants, bargains, sets over, assigns, delivers and conveys all of its right, title and interest in and to the Equipment (except for those rights and interests granted under said Lease) to Purchaser.

| LESSEE/SELLER | LESSOR/PURCHASER |
|---|---|
| Tulare Local Health Care District | CELTIC LEASING CORP. |
| Signature: | Signature: |
| Name: Benny Benzeevi, MD | Name: Michael J. Purcell |
| Title: CEO  Date: 8.30.17 | Title: Executive Vice President  Date 08/30/17 |

1992 CELTIC LEASING CORP. (CMLPA 5/92)
L:\PLB

EXHIBIT __H__
Page __1__ Of __3__



Exhibit "<u>A</u>"
to
PURCHASE/LEASEBACK AGREEMENT and BILL OF SALE
relating to
Lease No. CML-<u>3826A</u>/ Schedule No. <u>3826A01</u>

Equipment:
<u>ITEM</u>  <u>QTY</u>  <u>SERIAL NO.</u>             <u>DESCRIPTION</u>

| Item | Vendor | Invoice # | Address | City | County | State | Zip |
|---|---|---|---|---|---|---|---|
| 1. | Hill-Rom | S010464130 | 446 West Prosperity Ave | Tulare | Tulare | CA | 93274 |
| 2. | FujiFilm Medical Systems USA, Inc. | 15188 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 3. | Beckman Coulter | 102788078 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 4. | Karl-Storz Endoscopy-America, Inc. | 15506 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 5. | Physio-Control, Inc. | 112111458 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 6. | Covidien | 17177845 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 7. | Covidien | 17186689 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 8. | Creche Innovations | 2912 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 9. | Karl-Storz Endoscopy-America, Inc. | 15506 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 10. | Karl-Storz Endoscopy-America, Inc. | 92489353 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 11. | Medline Industries, Inc. | 1054419482 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 12. | Medline Industries, Inc. | 1055014982 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 13. | Ohio Medical Corporation | 339043 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 14. | Stryker Sales Corporation | 1085515 M | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 15. | Owens & Minor | 4199188 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 16. | FDSI Logistics | 21860663 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 17. | Carl Zeiss Meditec, Inc. | 6044411074 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 18. | Biodex Medical Systems, Inc. | 227848 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 19. | GE Medical Systems | 80343395 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 20. | Smiths Medical ASD, Inc. | 12804833 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 21. | Scale-Tronix | 181206 | 446 West Prosperity Ave | Tulare | Tulare | CA | 93274 |
| 22. | Biodex Medical Systems, Inc. | 229130 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 23. | Novum Medical Products, Inc. | 27734 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 24. | CareFusion | 9103664443 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 25. | CareFusion | 9103777669 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 26. | Covidien | 16542695 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 27. | Grainger | 8672324739 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 28. | Gyrus ACMI,LP | 101433860 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 29. | Medisafe America LLC | 26378 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 30. | Karl-Storz Endoscopy-America, Inc. | 92338451 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 31. | Karl-Storz Endoscopy-America, Inc. | 92339804 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 32. | Karl-Storz Endoscopy-America, Inc. | 92338450 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 33. | Karl-Storz Endoscopy-America, Inc. | 92347138 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 34. | Karl-Storz Endoscopy-America, Inc. | 92349192 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 35. | Olympus America Inc. | 12932823 R1 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 36. | The Drappery Shoppe | 1952 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 37. | Intuitive Surgical | 900360958 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 38. | Case Medical | 46251 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 39. | Integra | 2225893 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 40. | Integra | 2215678 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 41. | Wilson Medical Specialists, Inc. | 232883 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 42. | Wilson Medical Specialists, Inc. | 232952 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |

L:EXPLB000

EXHIBIT H
Page 2 Of 23

Exhibit "A" to PURCHASE/LEASEBACK AGREEMENT AND BILL OF SALE
Page 2

| # | Vendor | Serial/ID | Address | City | County | State | Zip |
|---|---|---|---|---|---|---|---|
| 43. | Teleflex Medical | 844764 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 44. | Johnson & Johnson Health Care Systems, Inc. | 906457060 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 45. | Stryker Sales Corporation | 4030842-E | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 46. | Herzog Surgical | 80845 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 47. | Teleflex Medical | 15371 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 48. | Karl-Storz Endoscopy-America, Inc. | 92372540 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 49. | Intuitive Surgical | 900360959 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 50. | CareFusion | 9103788127 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 51. | CareFusion | 9103785405 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 52. | Maquet Getinge Group | 2690380749 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 53. | GE Medical Systems | 80356425 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 54. | GE Medical Systems | 80356432 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 55. | GE Medical Systems | 80355500 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 56. | GE Medical Systems | 80380566 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 57. | Olympus America Inc. | 14499914 RJ | 446 West Prosperity Ave | Tulare | Tulare | CA | 93274 |
| 58. | Hospital Associates | 162057-00 | 446 West Prosperity Ave | Tulare | Tulare | CA | 93274 |
| 59. | Hospital Associates | 162057-01 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 60. | Hospital Associates | 162057-02 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 61. | Hospital Associates | 162057-03 | 446 West Prosperity Ave | Tulare | Tulare | CA | 93274 |
| 62. | Newmatic Medical | W026390 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 63. | GE Medical Systems | 80380254 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 64. | Melo's Gas & Gear | 529065 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 65. | Stryker Sales Corporation | 2403402-1 DM | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 66. | Stryker Sales Corporation | 2403014-1 DM | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 67. | Stryker Sales Corporation | 2403008-1 DM | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 68. | Stryker Sales Corporation | 2401748-1 DM | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 69. | Stryker Sales Corporation | 2401762-1 DM | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 70. | Stryker Sales Corporation | 2403000-1 DM | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 71. | Stryker Sales Corporation | 2403352-1 DM | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 72. | Stryker Sales Corporation | 2403381-1 DM | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 73. | Stryker Sales Corporation | 1211942 M | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 74. | Vital Signs, Inc. | 8480121715 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 75. | Vital Signs, Inc. | 8433821715 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 76. | CDW Government | DZ77084 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |
| 77. | Natus | 1040032866 | 869 Cherry Ave | Tulare | Tulare | CA | 93274 |

| LESSEE/SELLER | LESSOR/PURCHASER |
|---|---|
| Tulare Local Health Care District | CELTIC LEASING CORP. |
| Signature: [signed] | Signature: [signed] |
| Name: Benny Benzeevi, MD | Name: Michael J. Purcell |
| Title: CEO | Title: Executive Vice President |
| Date: 8.30.2017 | Date: 08/30/17 |

L:\EXPLB000

EXHIBIT H
Page 3 Of- 3

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Corporation Service Company 1-800-858-5294

B. E-MAIL CONTACT AT FILER (optional)
SPRFiling@cscinfo.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

1351 52153

Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed in: California (S.O.S.)

17-7601983921
08/21/2017 17:00
FILED
CALIFORNIA
SECRETARY OF STATE

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME:
   1a. ORGANIZATION'S NAME: Tulare Local Health Care District
   1c. MAILING ADDRESS: 869 North Cherry St. | CITY: Tulare | STATE: CA | POSTAL CODE: 93274 | COUNTRY: USA

2. DEBTOR'S NAME: (blank)

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):
   3a. ORGANIZATION'S NAME: MB Financial Bank, N.A.
   3c. MAILING ADDRESS: 6111 North River Rd., 9th Floor | CITY: Rosemont | STATE: IL | POSTAL CODE: 60018 | COUNTRY: USA

4. COLLATERAL: This financing statement covers the following collateral:
Leased property as set forth on Exhibit A attached hereto and made a part hereof.

5. Check only if applicable and check only one box: Collateral is [ ] held in a Trust [ ] being administered by a Decedent's Personal Representative

6a. [ ] Public-Finance Transaction [ ] Manufactured-Home Transaction [ ] A Debtor is a Transmitting Utility
6b. [ ] Agricultural Lien [ ] Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): [ ] Lessee/Lessor [ ] Consignee/Consignor [ ] Seller/Buyer [ ] Bailee/Bailor [ ] Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA: :CA SOS (REF: CML-3826A01) - PN

1351 52153

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Corporation Service Company
2711 Centerville Rd, Ste 400
Wilmington, DE 19808

EXHIBIT I
Page 1 Of 3

6J561240002

# Exhibit "A"
to
## UNIFORM COMMERCIAL CODE - FINANCING STATEMENT - FORM UCC-1

Debtor Corporate Address : 869 North Cherry St., Tulare, CA 93274

Property Location : Same as above (and any subsequent locations)

**Description of Property Covered:**

| ITEM | QTY | SERIAL NO. | DESCRIPTION |
|---|---|---|---|

All equipment and other personal property and all modifications and additions thereto and replacements and substitutions therefor, in whole or in part, now or hereafter covered by that certain Lease Schedule No. 3826A01, to Master Lease No. CML-3826A, between Celtic Leasing Corp., as Lessor, and Tulare Local Health Care District, as Lessee. Said equipment is expected to include, but is not limited to, the items listed below, as follows:

VENDOR: to be determined

1.-7    various    Items of Equipment expected to include: Miscellaneous medical equipment, and/or other related and/or accessory property. Items 1. and on shall be enumerated and described in further detail, including location and vendor name, at a later date on the related applicable Acceptance Certificate(s).

Including all attachments and accessories thereto, and all proceeds thereof, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, contract rights and general intangibles.

This filing is for precautionary purposes in connection with a leasing transaction and is not to be construed as indicating that the transaction is other than a true lease.

L:\EXUBLIMT

EXHIBIT I
Page 2 Of 3



**SECRETARY OF STATE**
**STATE OF CALIFORNIA**

## UCC Filing Acknowledgement

08/22/2017

Page 1 of 1

CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
SPRINGFIELD IL 62703-4261

Filing Fee:

Total Fee:



The California Secretary of State's Office has received and filed your document. The information below reflects the data that was indexed in our system. Please review the information for accuracy. Included is an image of the filed document to assist you in your review. If you find a potential error, please notify the UCC Section at the number listed below at your earliest convenience.

**Filing Type:** Financing Statement　　　**File Date:** 08/21/2017　　　**File Time:** 17:00
**Filing Number:** 17-7601983921　　　**Lapse Date:** 08/21/2022

**Debtor(s):**
ORGANIZATION　　　TULARE LOCAL HEALTH CARE DISTRICT

869 NORTH CHERRY ST. TULARE CA USA 93274

**Secured Party(ies):**
ORGANIZATION　　　MB FINANCIAL BANK, N.A.

6111 NORTH RIVER RD., 9TH FLOOR ROSEMONT IL USA 60018

Filing by the Secretary of State is not conclusive proof that all conditions for securing priority have been met. Ensuring that accurate information is on the document to be filed is the responsibility of the filing party. If this filing is challenged, the Secretary of State does not guarantee that the filing is legally sufficient to secure priority under UCC Article 9 and expressly disclaims any liability for failure of the filing party to secure priority resulting from the information contained in the filed document, or the lack of information on the filed document.

UNIFORM COMMERCIAL CODE 1500 11TH STREET, 2ND FL. · SACRAMENTO, CA 95814 · PO BOX 942835 · SACRAMENTO, CA 94235-0001 · (916) 653-3516 · HTTPS://UCCCONNECT.SOS.CA.GOV

PROGRAMS   ARCHIVES, BUSINESS PROGRAMS, ELECTIONS, INFORMATION TECHNOLOGY, CALIFORNIA STATE HISTORY MUSEUM,
MANAGEMENT SERVICES, SAFE AT HOME, DOMESTIC PARTNERS REGISTRY, NOTARY PUBLIC, POLITICAL REFORM

EXHIBIT I
Page 3 Of 3



**Secretary of State
Statement of Information
(Limited Liability Company)**

LLC-12

17-A88177

**FILED**

In the office of the Secretary of State
of the State of California

OCT 04, 2017

This Space For Office Use Only

**IMPORTANT** — Read instructions **before completing this form.**

**Filing Fee – $20.00**

**Copy Fees** – First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

**1. Limited Liability Company Name** (Enter the exact name of the LLC. If you registered in California using an alternate name, see instructions.)
TULARE ASSET MANAGEMENT, LLC

| 2. 12-Digit Secretary of State File Number | 3. State, Foreign Country or Place of Organization (only if formed outside of California) |
|---|---|
| 201630910116 | CALIFORNIA |

**4. Business Addresses**

| | City | State | Zip Code |
|---|---|---|---|
| a. Street Address of Principal Office - Do not list a P.O. Box<br>869 N. Cherry Street | Tulare | CA | 93274 |
| b. Mailing Address of LLC, if different than item 4a<br>4934 Lakewood Drive | Visalia | CA | 93291 |
| c. Street Address of California Office, if Item 4a is not in California - Do not list a P.O. Box<br>869 N. Cherry Street | Tulare | CA | 93274 |

**5. Manager(s) or Member(s)** — If no managers have been appointed or elected, provide the name and address of each member. At least one name and address must be listed. If the manager/member is an individual, complete Items 5a and 5c (leave Item 5b blank). If the manager/member is an entity, complete Items 5b and 5c (leave Item 5a blank). Note: The LLC cannot serve as its own manager or member. If the LLC has additional managers/members, enter the name(s) and addresses on Form LLC-12A (see instructions).

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| yorai | | benzeevi | |

b. Entity Name - Do not complete Item 5a

| c. Address | City | State | Zip Code |
|---|---|---|---|
| 4924 Lakewood Drive | Visalia | CA | 93291 |

**6. Service of Process** (Must provide either Individual OR Corporation.)

**INDIVIDUAL** – Complete Items 6a and 6b only. Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is not a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Street Address (if agent is not a corporation) - Do not enter a P.O. Box | City | State | Zip Code |
|---|---|---|---|
| | | CA | |

**CORPORATION** – Complete Item 6c only. Only include the name of the registered agent Corporation.

c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 6a or 6b
PARACORP INCORPORATED (C1082536)

**7. Type of Business**
a. Describe the type of business or services of the Limited Liability Company
Hospital management services

**8. Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Address | City | State | Zip Code |
|---|---|---|---|
| | | | |

**9. The Information contained herein, including any attachments, is true and correct.**

| 10/04/2017 | yorai benzeevi | Manager | |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

**Return Address (Optional)** (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address. This information will become public when filed. SEE INSTRUCTIONS BEFORE COMPLETING.)

Name:
Company:
Address:
City/State/Zip:

LLC-12 (REV 01/2017)     Page 1 of 1     2017 California Secretary of State
www.sos.ca.gov/business/be

EXHIBIT J
Page 1 Of 1



2016 30910116

# Secretary of State
## Articles of Organization
### Limited Liability Company (LLC)

LLC-1

**FILED**
Secretary of State
State of California

OCT 31 2016

This Space For Office Use Only

---

**IMPORTANT** — Read Instructions before completing this form.

**Filing Fee** - $70.00

**Copy Fees** - First plain copy free; Additional copies: First page $1.00 & .50 for each attachment page; Certification Fee - $5.00

*Important!* LLCs may have to pay an annual minimum $800 tax to the California Franchise Tax Board. For more information, go to https://www.ftb.ca.gov.

**1. Limited Liability Company Name** (See Instructions — Must contain an LLC ending such as LLC or L.L.C. "LLC" will be added, if not included.)

TULARE ASSET MANAGEMENT, LLC

**2. Business Addresses**

| a. Initial Street Address of Designated Office in California - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 4924 LAKEWOOD DRIVE | VISALIA | CA | 93291 |
| b. Initial Mailing Address of LLC, if different than Item 2a | City (no abbreviations) | State | Zip Code |
|  |  |  |  |

**3. Agent for Service of Process**

Item 3a and 3b: If naming an Individual, the agent must reside in California and Item 3a and 3b must be completed with the agent's name and complete California street address.

Item 3c: If naming a California Registered Corporate Agent, a current agent registration certificate must be on file with the California Secretary of State and Item 3c must be completed (leave Item 3a-3b blank).

| a. California Agent's First Name (if agent is not a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
|  |  |  |  |

| b. Street Address (if agent is not a corporation) - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
|  |  | CA |  |

c. California Registered Corporate Agent's Name (if agent is a corporation) — Do not complete Item 3a or 3b

PARACORP INCORPORATED

**4. Management** (Select **only** one box)

The LLC will be managed by:

☐ One Manager　　☐ More than One Manager　　☑ All LLC Member(s)

**5. Purpose Statement** (Do not alter Purpose Statement)

The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the California Revised Uniform Limited Liability Company Act.

**6.** The Information contained herein, including in any attachments, is true and correct.

_____　　BRUCE R. GREENE
Organizer sign here　　　　　　　　　　Print your name here

EXHIBIT ___K___
Page __1__ Of __1__

LLC-1 (REV 06/2016)　　　　　　　　　　　　　　　　2016 California Secretary of State
　　　　　　　　　　　　　　　　　　　　　　　　　　www.sos.ca.gov/business/be